IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : CRIMINAL NO. 21-cr-28-16 (APM) |
| | : |
| v. | : |
| | : |
| WILLIAM ISAACS, | : |
| | : |
| Defendant. | : |
| | : |

**UNITED STATES' MOTION TO EXCLUDE EVIDENCE ABOUT
DEFENDANT'S ALLEGED MENTAL CONDITION AND REQUEST
FOR DAUBERT HEARING**

Pursuant to Federal Rules of Evidence 401, 403, 702, 703, and 704, the Court should preclude Defendant William Isaacs from presenting testimony or evidence about his alleged diagnosis of Autism Spectrum Disorder (ASD) and how that condition prevented him from forming the necessary intent to commit the crimes with which he is charged. The government also requests that this Court require Defendant Isaacs to present his proffered expert witness at a *Daubert* hearing to determine whether her testimony is admissible.

I.   **LEGAL STANDARD**

   A.   **Rules of Evidence**

Federal Rules of Evidence 702, 703, and 704 establish the basic parameters for expert witness testimony. Rule 702 permits a witness who is qualified as an expert to testify in the form of an opinion if the "expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. To be admissible at trial, expert testimony "must be helpful to the trier of fact" and cannot serve to "merely tell the jury what result to reach." Fed. R. Evid. 704, Advisory Committee Notes.

Applying these rules, the Supreme Court has held that a trial court must act as a "gatekeeper" and exclude expert testimony if it is (1) not reliable or (2) not relevant. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993) (observing that Rule 702 assigns to the trial judge the task of ensuring "that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand"). This test ensures that each testifying expert, "whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999). An expert's opinion testimony will be excluded as unreliable if the expert is unqualified to provide the opinion, if the expert did not base the opinion on sufficient facts or data or employ reliable methods and principles, or if the expert did not reasonably apply appropriate methods and principles to the facts of the case. *See* Fed. R. Evid. 702 (requiring expert testimony to meet these standards); *Kumho Tire*, 526 U.S. at 155-56 (affirming exclusion of expert testimony based upon unreliable methodology).

In a criminal case such as this one, Rule 704 further prohibits an expert from providing an opinion "about whether the defendant did or did not have a mental state . . . that constitutes an element of the crime charged." Fed. R Evid. 704(b). Rather, "[t]hose matters are for the trier of fact alone." *Id*. An expert also may not testify to legal conclusions, as such testimony does not properly assist the jury in understanding the evidence or determining any fact at issue—Rule 702's stated purpose for allowing expert testimony. *See Burkhart v. Wash. Metro. Area Transit Auth.*, 112 F.3d 1207, 1212 (D.C. Cir. 1997) ("Expert testimony that consists of legal conclusions cannot properly assist the trier of fact in either respect, and thus it is not 'otherwise admissible' [under Rule 704].").

Expert testimony must also satisfy the basic relevancy rules set forth in Rules 401 and 403. As the Supreme Court explained, because "[e]xpert evidence can be both powerful and quite misleading . . . the judge in weighing possible prejudice against probative force under Rule 403 . . . exercises more control over experts than over lay witnesses." *Daubert*, 509 U.S. at 595 (citations omitted).

Finally, the D.C. Circuit, relying on Rule 704, has laid out a stringent two-part test for the admission by criminal defendants of expert testimony regarding an alleged psychological condition:

> (a) the evidence is admitted not as an affirmative defense to excuse the defendant from responsibility for his acts, but to negate specific intent when that is an element of the charged act itself and (b) the expert limits his testimony to his diagnoses, the facts upon which those diagnoses are based, and the characteristics of any mental diseases or defect the experts believe the defendant possessed during the relevant time period, staying clear of directly or indirectly opining on the ultimate issue of specific intent.

*United States v. Childress*, 58 F.3d 693, 727-28 (D.C. Cir. 1995) (per curiam) (internal citations, quotation marks, and alterations omitted). The Circuit held that "it remains for the district court to determine whether the testimony is grounded in sufficient scientific support to warrant use in the court room, and whether it would aid the jury in reaching a decision on the ultimate issue." *Id*. (internal citations and quotation marks omitted). The concern that "evidence of general mental capacity [would] be used to persuade a jury that a defendant is not responsible for his deliberate and purposeful activity"—usage that the Circuit notes "exceeds the bounds of *mens rea* evidence"—is "best addressed through the district court's assessment of the reliability and probity of the evidence and its careful administration of that evidence." *Id*. at 730 (internal quotation marks omitted). When determining admissibility, "[t]he proper focus [is] on the proffered link or

relationship between the specific psychiatric evidence offered and the *mens rea* at issue in the case." *Id.* (quoting *United States v. Cameron*, 907 F.2d 1051, 1067 (11th Cir. 1990)) (internal quotation marks omitted).

### B. *Mens Rea* Requirements for Charged Crimes

In the Eighth Superseding Indictment (ECF No. 684), Defendant Isaacs is charged with the following seven counts:

(1) conspiracy to obstruct an official proceeding, in violation of 18 U.S.C. § 1512(k);

(2) obstruction of an official proceeding, in violation of 18 U.S.C. § 1512(c)(2);

(3) conspiracy to prevent Members of Congress from discharging their duties, in violation of 18 U.S.C. § 372;

(4) destruction of government property, in violation of 18 U.S.C. § 1361;

(5) entering and remaining in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(1); and

(6) and (7) two counts of interference with law enforcement officers during a civil disorder, in violation of 18 U.S.C. § 231(a)(3).

For the two conspiracy charges, counts 1 and 3, the *mens rea* requirement is "knowingly" joining the conspiracy with the same intent as the underlying crimes. *See* Final Jury Instructions in *United States v. Rhodes*, 22-cr-15 (APM) (ECF No. 400) [*Rhodes* Instructions] at 17 (listing the second element for conspiracy charges as "the defendant knowingly became a member of the conspiracy, with intent to achieve the illegal object of the charged conspiracy"); *see also Childress*, 58 F.3d at 707 (holding that "conspiracy is a 'specific intent' crime," because "proof of conspiracy requires proof of specific intent to further the conspiracy's objective").

4

For count 2, obstruction of an official proceeding, there are three *mens rea* requirements: "the defendant intended to obstruct or impede the official proceeding," "the defendant acted knowingly," and "the defendant acted corruptly." *Rhodes* Instructions at 26.

For count 4, destruction of government property, the *mens rea* requirement is "willfully." *Id.* at 33.

For count 5, entering and remaining in a restricted building or grounds, the *mens rea* requirement is "knowingly." Final Jury Instructions in *United States v. Webster*, 21-cr-208 (APM) (ECF No. 101) at 19.

For counts 6 and 7, interference with officers during a civil disorder, there are two *mens rea* requirements: "knowingly" committing an act and that the "the defendant intended to obstruct, impede, or interfere with one or more law enforcement officers." *Rhodes* Instructions at 37.

Therefore, counts 1, 2, 3, 6, and 7 are specific intent crimes, while counts 4 and 5 are general intent crimes.

## II.     THE DEFENSE'S PROFFERED EXPERT AND HER REPORT

The defense provided notice that its expert, Dr. Laurie Sperry, will opine that Defendant Isaacs suffered from ASD, that he "lacked the capacity to fully understand what was happening on January 6," that his ASD "played a substantial and likely controlling role in his conduct on January 6," and that "ASD is a substantial factor and circumstance that must be considered in determining whether he had the requisite intent to commit the offenses with which he is charged." ECF No. 757 at 2. None of these opinions is proper expert testimony.

On January 18, 2023, the defense provided Dr. Sperry's final report ("Sperry Report") to the government.[1]  According to her report, she will provide the following opinions:

> In summary, it is my opinion that William's autism played a significant role on January 6, 2021.  He was hyper-fixated on the role he was playing as a security aid to the President and he would have had extreme difficulty evaluating the events, which were occurring rapidly and required split second decisions. He would have followed the lead of those around him and would have tended to repeat their words and conduct. This conduct is consist [*sic*] with someone with ASD who cannot see the "big picture," or, colloquially, cannot discern "the forest for the trees." William would have been following the orders of the President and would have been focused on that order. His behavior would have demanded he do.
>
> In this situation, where the President himself urged William to do something, it would have been difficult if not impossible for him or anyone else with ASD to discern that a crime was being committed. In William's world, where following the rules and the orders of those in authority is mandatory, it would be impossible for him to even imagine that the President would urge him to commit a crime. Even if William was part of a group which intended to commit a crime, he would have difficulty reading their intent, especially if the events were not preplanned by him and required him to make split second assessments and decisions. William does not have the capacity to make split second decisions in chaotic situations. Rather, to find solid ground, to survive emotionally, it is more likely that he would mimic the behavior and words of those around him, trying to fit in.
>
> William, like all or most people with autism, is skilled at paying attention to extreme detail. The fact that the President of the United States encouraged people to march on the Capitol, in combination with his ROTC training to follow orders, would have made it virtually impossible for William to resist the presidential order. His strong need to be of service would have given that order even more magnitude. It is my opinion that he would have been unable to accurately assess the situation and glean the malintent of those around him. It would certainly have been far more difficult for him than for someone without ADS [*sic*] and without his traumatic personal history. He was easily subject to manipulation and was, in fact, manipulated, whether purposefully or not, by those he followed on January 6th.
>
> During my interviews with William, it became clear that he sought community, belonging and purpose through first responder groups so he could render aid if needed. That was his primary intent. He spoke reverently of wearing a uniform. William wore his ROTC uniform throughout high

---

[1] The government is providing the Court with Dr. Sperry's report as Exhibit 1, under seal.

> school and his fire academy uniform to classes and for midterms. During my meetings with him, William reflected on the cost of putting on an Oath Keepers t-shirt one time and the resultant cost to his future when he was so close to achieving his goal of serving others as a first responder.
>
> My opinion is that William's ASD is a critical factor that must be considered in determining whether he had the requisite intent to commit the crimes with which he was charged. It is my opinion, based upon my interviews of William, and the characteristic symptoms of ASD, that William had shut down and withdrawn into himself due to the overwhelming noise and chaos when he entered the Capitol. This conclusion is buttressed by the fact that William has suppressed his memories and reported things going "blank" for him once he was inside the Capitol. He was following the crowd, literally and figuratively, without being aware of the direction he was going.
>
> Even if his ASD did not negate the intent necessary to find William guilty of one or more of the crimes with which he was charged, his disability carries with it both a processing delay and an inability to grasp and comprehend the events that were occurring in rapid fire in a chaotic situation where he would have been unable to make sense of what was happening around him. Therefore, his disability and life circumstances are strongly mitigating factors that should be considered by the Court.

Sperry Report at 60-62.

In addition, despite stating in the introduction to her report that she has been "qualified as an expert" in "more than 30 cases," Sperry Report a 3, the government has not located any cases, in state or federal court, in which a court appears to have qualified Dr. Sperry to testify as an expert witness.[2]

---

[2] After the government requested a list as required by Federal Rule of Criminal Procedure 16(b)(1)(C)(iii), the defense identified the following three cases in which it claims she was qualified to testify as an expert:
- *United States v. Tremblay*, 1:16-cr-00064-CMA-1 (District of Colorado).
- *State v. Behnke*, S-0300-CR-201500440 (2015) (Arizona Superior Court, Coconino County).
- *People v. McCollum*, 9270/2015 (New York State Supreme Court, Kings County), with a reported decision at 61 Misc. 3d 1209(A) (2018), 2018 WL 4925170.

However, the government has been unable to locate any records of Dr. Sperry being qualified to testify as an expert witness in these (or any other) cases. In *Tremblay*, Dr. Sperry

To be clear, the government does not contest Dr. Sperry's academic pedigree or professional affiliations. Rather, the government challenges whether she can be—including whether she has ever been—qualified to opine whether a person's ASD diagnosis has any impact on that person's ability to form the requisite intent to commit the alleged crimes.

## III.   ARGUMENT

### A. The Court Should Order a *Daubert* Hearing to Determine Whether Dr. Sperry's Testimony Is Admissible.

Rule 702 specifically allows for a pretrial *Daubert* evidentiary hearing to assist the Court with acting as a "gatekeeper" to determine if the proponent has met its burden of admissibility. Fed. R. Evid. 702, Advisory Committee Note (2000); *see also* Fed. R. Evid. 104(a) ("The court must decide any preliminary question about whether a witness is qualified . . . or evidence is admissible."). The Court, of course, has discretion on whether to require "special briefing" or to conduct a *Daubert* hearing. *Kumho Tire*, 526 U.S. at 152. But "[a] district court should conduct a *Daubert* inquiry when the opposing party's motion for a hearing is supported by conflicting medical literature and expert testimony." *United States v. Hansen*, 262 F.3d 1217, 1234 (11th Cir. 2001) (internal quotation marks omitted). Indeed, the D.C. Circuit has favorably noted the district court's holding a pretrial evidentiary hearing to determine the bases and parameters of a proposed defense psychiatric expert about a defendant's ability to form the requisite *mens rea* in light of an

---

appears to have prepared a report, on behalf of the defendant, that was submitted to the court as part of sentencing following a guilty plea. In *Behnke*, the online docket reflects that the case did not go to trial but rather resulted in a guilty plea; it does not appear that anyone was qualified as an expert witness in a proceeding there. And in *McCollum*, the published opinion references that after the defendant "pleaded not responsible by reason of mental disease or defect," the court reviewed submissions from several doctors; none of those doctors appears to have been Dr. Sperry, and the court does not appear to have qualified any of the doctors as expert witnesses.

ADHD diagnosis. *United States v. Davis*, 863 F.3d 894, 908 (D.C. Cir. 2017). Particularly because Defendant Isaacs' proffered expert testimony about ASD and criminal intent does not appear to have ever been admitted in federal court under Rule 702, the Court should exercise its discretion here to conduct a hearing at which it hears testimony from Dr. Sperry.

The government retained its own expert, Dr. Galit Askenazi, to examine Defendant Isaacs and prepare a rebuttal report ("Askenazi Report").[3] Dr. Askenazi principally found that (1) Dr. Sperry failed to conduct cognitive testing to determine what if any cognitive limitations Defendant Isaacs possessed, and (2) Dr. Askenazi's own testing showed that Defendant Isaacs has never had "significant objective cognitive impairments" associated with ASD. Askenazi Report at 26. Moreover, contrary to what Dr. Sperry reported, Dr. Askenazi reported that Defendant Isaacs "described having acted independently and in a purposeful and knowing manner, not under the direction of others," and that rather than blacking out memories of what he did while at the Capitol, "it is most likely that he remembers more than what he shared." *Id.* at 27.

The government has not located a single case in which an expert was qualified to testify about a criminal defendant's diagnosis of ASD, including the effect of an ASD diagnosis on the defendant's ability to form the *mens rea* necessary for the crime. Indeed, in *Rodgers v. State*, 100 So.3d 989, 995 (Miss. Ct. App. 2012), a state appellate court affirmed a trial court's decision to exclude proffered expert testimony similar to the testimony proffered here—that a conspiracy defendant's mental condition of Asperger's syndrome (part of the spectrum of ASD) "could render him unable to readily comprehend that he was participating in a crime." Similar to Dr. Sperry's proffered testimony about Defendant Isaacs, the excluded expert in *Rodgers* would have testified

---

[3] The government is providing the Court with Dr. Askenazi's report as Exhibit 2, under seal.

that the defendant was "agreeable," had a desire to "please people," and "might be easily exploited"; rather than proper expert testimony, this was improper "opinion evidence as to whether Rodgers's mental deficiencies made it unlikely that he was capable of knowing what he was doing." *Id.*

There is no basis for a defense expert to assert that people with ASD lack the ability to form the intent necessary to enter into a conspiracy or to corruptly obstruct a proceeding. In a leading academic paper on ASD and violence, the authors advocated against a generalization of ASD tendencies and noted the broad spectrum of individuals with ASD. *See* Stephen G. White, et al., *Autism Spectrum Disorder and Violence: Threat Assessment Issues*, in Journal of Threat Assessment and Management (2017), vol. 4, no. 3, at 144, available at http://dx.doi.org/10.1037/tam0000089. "The population of individuals with ASD is not served by blanket statements that their condition either leads to violence, or it does not. People are individuals, not a diagnosis, and there are many reasons why they may do the things they do, for good, or otherwise." *Id.*

The government respectfully submits that Defendant Isaacs cannot meet his burden under Rule 702 to sponsor Dr. Sperry as an expert witness to opine on whether his ASD diagnosis negates or even affects his intent to commit the charged crimes.

### B. Dr. Sperry's Testimony Should Be Barred Under Rules 702 and 704 Because It Intrudes On the Jury's Role.

According to the defense, Dr. Sperry will opine that Defendant Isaacs, as a result of his ASD, "lacked the capacity to fully understand what was happening on January 6." ECF No. 757. Further, her opinion is that his ASD "played a substantial and likely controlling role in his conduct on January 6" and that his "ASD is a substantial factor and circumstance that must be considered

in determining whether he had the requisite intent to commit the offenses with which he is charged." *Id*. In her report, Dr. Sperry goes on to ascribe intent to the defendant for his actions on January 6: that he was following and mimicking others and simply prepared to render aid. *See* Sperry Report at 61 ("During my interviews with William, it became clear that he sought community, belonging and purpose through first responder groups so he could render aid if needed. <u>That was his primary intent</u>."). This proffered testimony breaches the barrier between *mens rea* testimony and "diminished responsibility" testimony that the Circuit sough to preserve in *Childress*. 58 F.3d at 729.

Relying on *Childress* and Rules 702 and 704, other judges of this Court have precluded similar proffered defense experts. In *United States v. Davis*, 78 F. Supp. 3d 17, 20 (D.D.C. 2015), Judge Hogan noted that "[i]t is proper to exclude proposed psychiatric evidence when a defendant is not able to establish a link or relationship between the evidence and the *mens rea* at issue in the case." *Id*. In *Davis*, there was an insufficient link between the defendant's alleged ADHD diagnosis and the charged scheme to conspire to submit fraudulent income tax returns. *Id.* at 21. As Judge Hogan held: "it is difficult to see how such testimony could be helpful to the jury when Dr. Madsen has no knowledge regarding Ms. Davis's tax preparation business, the day-to-day tasks she performed as a tax preparer, or any of her job responsibilities." *Id.* Dr. Sperry similarly has no knowledge of Defendant Isaacs' thought processes or ability to enter into agreements in the weeks leading up to January 6, 2021. The D.C. Circuit held that Judge Hogan did not abuse his discretion in excluding the ADHD expert's testimony, because that proffered testimony did not offer sufficient insight into the defendant's *mens rea* in conspiring to commit tax fraud. *Davis*, 863 F.3d at 904. The same is true here.

11

Similarly, in *United States v. Rogers*, No. 05-cr-292 (RWR), 2006 WL 5249745, at *1, *6 (D.D.C. July 17, 2006), Judge Roberts excluded as a defense expert a psychologist who was proffered to opine that the defendant was predisposed to lack the capacity to function as a solo practitioner of elder law. The court held that the expert's opinions lacked probative value on the question of whether the defendant had the requisite *mens rea* to commit the charged crime, mail fraud. *Id.* at *6. Like the decision in *Davis*, in *Rogers* the proffered expert's testimony could not "establish an inability to deceive," and thus did bear on the question of whether the defendant "could and did" perform the actions alleged in the indictment. *Id.* at *7.

Dr. Sperry's proffered testimony does not meet the strict conditions outlined in *Childress*, and it therefore will not "help" the jury under Rule 702(a). Rather, the proffered testimony is an attempt to introduce "evidence of general mental capacity" to "persuade [the] jury that [the] defendant is not responsible for his deliberate and purposeful activity." *Childress*, 58 F.3d at 730. The proffered link between Dr. Sperry's analysis and Defendant Isaacs' intent in joining the conspiracy is missing. She cannot opine on whether Defendant Isaacs could and did have the capacity to enter into the conspiracy in the weeks leading up to January 6, 2021. Like the proffered experts in *Davis* and *Rogers*, Dr. Sperry's limited knowledge of the actions that serve as the basis for the charges severely limits the helpfulness of her testimony.

Moreover, Dr. Sperry's proffered opinion that Defendant Isaacs "lacked the capacity to fully understand what was happening," ECF No. 757, constitutes an impermissible legal conclusion that he did not have the require mental state to commit the crimes alleged here. Her opinion is therefore inadmissible under Rule 704(b) and not helpful under Rule 702. *See Burkhart*, 112 F.3d at 1212 (holding that expert testimony "that consists of legal conclusions" is inadmissible

12

because it "cannot properly assist the trier of fact"). An opinion like the one suggested in her report, that Defendant Isaacs' mental condition of ASD "negate[d] the intent necessary to find William guilty of one or more of the crimes with which he was charged," Sperry Report at 61, will improperly invade the province of the jury, which is solely responsible for ultimately determining whether the defendant's conduct was lawful.

      **C.    Dr. Sperry's Testimony Should Be Barred Under Rule 403 Because It Carries a Substantial Risk of Misleading the Jury.**

Even if Dr. Sperry's testimony were admissible under Rule 702, the substantial risk of misleading and confusing the jury renders it inadmissible under Rule 403 for three reasons: (a) it suggests excuse or justification, (b) it conflates with a public authority defense, and (c) it calls for Defendant Isaacs' own hearsay recitation of what he intended.

*Excuse or justification*. The D.C. Circuit admonished that "evidence of general mental capacity [must] not be used to persuade a jury that a defendant is not responsible for his deliberate and purposeful activity." *Childress*, 58 F.3d at 730. "Courts may exclude relevant psychiatric evidence under Rule 403 because psychiatric evidence (1) will only rarely negate specific intent, (2) presents an inherent danger that it will distract the jury's from focusing on the actual presence or absence of *mens rea*, and (3) may easily slide into wider usage that opens up the jury to theories of defense more akin to justification." *Rogers*, 2006 WL 5249745, at *6 (internal citations, quotation marks, and alterations omitted).

The Circuit's and district court's decisions in *Davis* are again instructive. As recounted by the Circuit, "[t]he district court reasonably concluded that allowing Dr. Madsen's testimony would, in effect, open up the jury to theories of defense more akin to justification, without offering any insight into [the defendant's] *mens rea*." *Davis*, 863 F.3d at 908 (internal citations, quotation

marks, and alterations omitted). And as Judge Hogan explained in precluding evidence of the defendant's ADHD diagnosis under Rule 403, this proffered psychological evidence "is precisely the type of 'justification or excuse' evidence that is not permitted because of the danger that it will mislead the jury." 78 F. Supp. 3d at 21.

Dr. Sperry's opinion can be boiled down to the same opinion the defendants sought to offer in *Davis* and *Rogers*: the defendant's mental health diagnosis justifies or excuses his conduct. Whatever probative value is supplied by Dr. Sperry's testimony is therefore substantially outweighed by the risk that her testimony will supplant the jury's determinations on intent.

*Public authority defense.* Dr. Sperry's testimony further risks conflating the issue of intent with a public authority defense. Dr. Sperry opined that the defendant's ASD diagnosis "would have made it difficult for him to plan his actions and were much more likely to result in him following the lead of others, especially those whom he perceived to be in positions of authority, such as the former President of the United States." ECF No. 757; *see also* Sperry Report at 61 ("The fact that the President of the United States encouraged people to march on the Capitol . . . would have made it virtually impossible for William to resist the presidential order."). During the pretrial conference on January 20, 2023, in the course of discussion the government's motion in limine, the Court already made clear that Defendant Isaacs cannot pursue a public authority defense.

*Hearsay.* Dr. Sperry's testimony should be excluded under Rule 403 for an additional reason: she would necessarily be repeating to the jury Defendant Isaacs' hearsay statements about the crimes themselves. For instance, Defendant Isaacs allegedly reported to Dr. Sperry that he came to D.C. on January 6 to see the president speak and to visit the Air and Space Museum, and

14

Case 1:21-cr-00028-APM Document 845 Filed 01/27/23 Page 15 of 16

that he went to the Capitol because the president said he was going there. Sperry Report at 51, 53. One of her conclusions, based on statements made to her by Defendant Isaacs and his attorneys, goes to the heart of the case: "William told me that he was not part of any plans or planning by the Oath Keepers to disrupt the election certification and his attorneys confirmed they had seen no evidence that he was ever involved in any such planning or in any other Oath Keeper's event prior to January 6th." *Id.* at 59.

To state her conclusions, Dr. Sperry must inform the jury of Defendant Isaacs' own statements to her about his intent and actions. Such statements from Defendant Isaacs are rank hearsay. To allow the defense to introduce such statements under the guise of expert testimony would be an end-run around traditional rules of evidence. Indeed, Rule 703 explicitly incorporates the concept from Rule 403 that "if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury *only if* their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect." Fed. R. Evid. 703 (emphasis added). Repeating to the jury Defendant Isaacs' self-serving statements about his own intent (or lack thereof) has a substantial prejudicial effect.

While an expert is entitled to rely on inadmissible evidence in forming her opinion, she must form her own opinions by applying her experience and methodology to the inadmissible statements, rather than "simply transmit the hearsay to the jury." *United States v. Mejia*, 545 F.3d 179, 197 (2d Cir. 2008). The Court should guard against an expert "repeating hearsay evidence without applying any expertise whatsoever," a practice that allows the proponent of the expert "to circumvent the rules prohibiting hearsay." *Id.* (internal quotation marks and citation omitted).

Any testimony offered by Dr. Sperry about what Defendant Isaacs was thinking at the time of the alleged crimes would confuse the jury and prejudice the government.

## IV. CONCLUSION

The government therefore respectfully requests that the Court hear testimony from Dr. Sperry at a *Daubert* hearing and preclude Defendant Isaacs from introducing any evidence or argument about ASD.

                                  Respectfully submitted,

                                  MATTHEW M. GRAVES
                                  UNITED STATES ATTORNEY
                                  D.C. Bar Number 481052

By:     /s/
        Jeffrey S. Nestler
        Assistant United States Attorney
        D.C. Bar No. 978296
        Troy A. Edwards, Jr.
        Kathryn Rakoczy
        Assistant United States Attorneys
        U.S. Attorney's Office for the District of Columbia
        601 D Street NW
        Washington, D.C. 20530

        /s/
Alexandra Hughes
Trial Attorney
National Security Division
950 Pennsylvania Avenue NW
Washington, D.C. 20004