UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| Plaintiff | ) | Criminal Case 21-CR-28 |
| | ) | |
| v. | ) | Hearing:  February 3, 2023 |
| | ) | |
| WILLIAM ISAACS | ) | Judge Amit P. Mehta |
| Defendant | ) | |

**WILLIAM ISAACS' RESPONSE IN OPPOSITION TO THE GOVERNMENT'S MOTION TO EXCLUDE EVIDENCE ABOUT DEFENDANT'S ALLEGED MENTAL CONDITION AND REQUEST FOR *DAUBERT* HEARING**

COMES NOW Defendant William Isaacs ("Mr. Isaacs"), by the undersigned counsel, and hereby respectfully submits this response in opposition to the Government's Motion to Exclude Evidence About Defendant's Alleged Mental Condition and Request for *Daubert* Hearing, ECF No. 845.

**ARGUMENT**

When considering admissibility of evidence, *Daubert* emphasizes the "liberal thrust" of the Federal Rules of Evidence, which favor the admissibility of expert opinion testimony. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 588 (1993) (quoting *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 169 (1988) (citing Federal Rules of Evidence 701 to 705)). "[T]he twin requirements for the admissibility of expert testimony are evidentiary reliability and relevance." *United States v. Naegele*, 471 F. Supp. 2d 152, 156 (D.D.C. 2007). The reliability analysis includes a review of the expert's methodology and qualifications. *See* Fed. R. Evid. 702; *Daubert,* 509 U.S. at 595. Regarding relevance, "the Court must determine whether the proffered testimony is sufficiently tied to the facts of

the case and whether it will aid the jury in resolving a factual dispute." *Naegele*, 471 F.

Supp. 2d at 157 (citing *Daubert*, 509 U.S. at 592–93). Mr. Isaacs submits that Dr. Laurie

Sperry's proffered testimony satisfies both the reliability and relevance criteria and

should be admitted.

## I.       The Forthcoming *Daubert* Hearing

The Court scheduled a *Daubert* hearing for February 3, 2023 to determine

whether Dr. Sperry's testimony is admissible. Notably, the Government does not

contest Dr. Sperry's academic pedigree or her professional affiliations, but challenges

only whether she can be qualified to opine whether a person's Autism Spectrum

Disorder ("ASD") diagnosis has any impact on that person's ability to form the requisite

intent to commit the alleged crimes. Govt. Mot. at 8.

Dr. Sperry will be in attendance at the hearing, and she will be prepared to

discuss her qualifications. *See* Sperry Report at Ex. A, and her proffered opinion

testimony.

## II.      Dr. Sperry's Proffered Testimony Should Be Admitted Pursuant to Federal Rules of Evidence 702 and 704.

When a defendant's mental state is in issue, the trier of fact should consider that

defendant's developmental disabilities (if any). *Cf. United States v. Childress*, 58 F.3d 693,

726 (D.C. Cir. 1995) (per curiam) ("We believe the proffered evidence of mental

retardation was thus potentially material as to whether Hardy entertained the specific

intent to further the purposes of the conspiracy, and we accordingly hold that the

district court erred in categorically barring such evidence."). As explained in Dr.

Sperry's report, "Autism Spectrum Disorder (ASD) is a developmental disability that significantly impacts the way a person communicates, interacts socially and behaves." Sperry Report at 5. Mr. Isaacs was first diagnosed with autism in 2010 when he was ten years old; to this day, he continues to meet the criteria for autism. *Id.* at 58. Dr. Sperry will testify about Mr. Isaacs' ASD diagnosis, the facts upon which that diagnosis is based, the characteristics of ASD generally, and the characteristics Dr. Sperry believes Mr. Isaacs possessed during the relevant time period. This is precisely the sort of testimony permitted by the two-part test set forth in *Childress. See* Govt. Mot. at 3.

 *United States v. Childress* is instructive regarding the thoughtful and deliberate approach the D.C. Circuit expects district courts to take when analyzing this issue. 58. F.3d 693 (D.C. Cir. 1995). Indeed, the D.C. Circuit recognizes the admissibility of a defendant's mental condition where (a) the evidence is not admitted as an affirmative defense to excuse the defendant from responsibility for his acts, but to negate specific intent when that is an element of the charged act itself; and (b) the expert limits his or her testimony to the diagnoses, the facts upon which those diagnoses are based, and the characteristics of any mental disease or defect the experts believe the defendant possessed during the relevant time period, staying clear of directly or indirectly opining on the ultimate issue of specific intent. *Id*. at 728.

 The Government's objection to Dr. Sperry's proffered testimony in this case touches upon the interplay between Federal Rules of Evidence 702 and 704, addressed by the D.C. Circuit in *Burkhart v. Wash. Metro. Area Transit Auth.*, 112 F.3d 1207, 1212 (D.C. Cir. 1997). In *Burkhart*, the D.C. Circuit noted the fine line that exists between an

expert opinion that is a pure legal conclusion, and an expert opinion pertaining "to facts that, if found, would support a conclusion that a particular legal standard at issue has [or has not] been satisfied." *Id.* at 1212–13.

The Government's argument that the link between Dr. Sperry's analysis and Mr. Isaacs' intent "is missing" is similarly without merit. As Dr. Sperry explains in her report: "The idea that a person who is easily manipulated, has scores that place him in the 5th lowest percentile on measures of how well he navigates daily life, demand that the idea that he has the ability to form requisite intent must be questioned as it relates to William." Sperry Report at 60. By explaining Mr. Isaacs' executive functioning deficits, sensory impairments, challenges with inhibitory control, suggestibility, and vulnerability to manipulation—some of the hallmarks of ASD that affect Mr. Isaacs— Dr. Sperry will assist the jury in understanding the evidence presented so that the jury can determine whether Mr. Isaacs had the specific intent required for Counts 1, 2, 3, 6, and 7.[1] This is exactly what Rule 702 requires—*i.e.*, that an "expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702.

Dr. Sperry's expert opinion testimony does not warrant exclusion simply because it embraces an ultimate issue to be decided by the trier of fact.  *See Burkhart,* 112 F.3d at 1212 ("Fed. R. Evid. 704(a) provides that 'otherwise admissible' opinion testimony 'is not objectionable because it embraces an ultimate issue to be decided by the trier of

---

[1] The Government alleges that Counts 1, 2, 3, 6, and 7 are all specific intent crimes.

fact."). Although "the line between an inadmissible legal conclusion and admissible assistance to the trier of fact in understanding the evidence or in determining a fact in issue is not always bright," *id.*, an expert witness can certainly testify regarding a defendant's mental health history that may have a tendency to negate the prosecution's proof on the issue of intent. While it would be improper to ask Dr. Sperry whether, for example, Mr. Isaacs had the specific intent to obstruct an official proceeding on January 6, 2021, it would be entirely appropriate to ask Dr. Sperry about Mr. Isaacs' ASD diagnosis, whether she confirmed that diagnosis, the characteristics of ASD generally, and whether Mr. Isaacs' exhibited characteristics of ASD that should be considered by anyone evaluating his mental state.  It is also entirely appropriate to ask Dr. Sperry if and how Mr. Isaacs' disability impacted his comprehension of the events that were taking place around him during the chaotic events that transpired on January 6, 2021. *Cf.* Fed. R. Evid. 704 advisory committee's note ("[T]he question 'Did T have capacity to make a will?' would be excluded, while the question, 'Did T have sufficient mental capacity to know the nature and extent of his property and the natural objects of his bounty and to formulate a rational scheme of distribution?' would be allowed."). Dr. Sperry's proffered testimony fits comfortably within the parameters of Rule 704.

### III.    Dr. Sperry's Testimony is Relevant and Does Not Carry a Substantial Risk of Misleading the Jury.

The Government asserts that Dr. Sperry's testimony carries a substantial risk of misleading the jury for three reasons: (a) it suggests excuse or justification; (b) it conflates with a public authority defense; and (c) it calls for Mr. Isaacs's own hearsay

recitation of what he intended. The government's arguments are flawed, and this Court should reject them.

        A.      *Dr. Sperry's Testimony Will Not Provide an Excuse or a Justification.*

First, and quite the contrary to the Government's presumption that Dr. Sperry will offer an "excuse or justification," Dr. Sperry's proffered testimony helps the jury understand how a person with ASD perceives information conveyed, reacts in certain social settings, and seeks companionship and camaraderie.

Here, the Government alleges that Counts 1, 2, 3, 6, and 7 for which Mr. Isaacs is charged require specific intent. *Id*. at 707. In *Childress*, where defendants were charged in a narcotics conspiracy, the government argued that a psychologist's report had "little, if any, probative value" as it related to a defendant who was legally competent, but effectively delayed. The D.C. Circuit explained that the proffered expert testimony that the defendant was mentally delayed "might well have assisted the jury to determine whether Hardy entertained this conspiratorial understanding and purpose." *Id*. at 728. Further, the D.C. Circuit noted its alignment with the Seventh Circuit Court of Appeals, which concluded that "relevant expert testimony detailing the defendant's mental health history which might have a tendency to negate the prosecution's proof of intent" is admissible. *Id*. at 730.

The court in *Childress* explained that whether evidence is relevant to negate specific intent as opposed to presenting a dangerously confusing theory of defense more akin to justification and excuse are best addressed through the district court's assessment of the reliability and probity of the evidence and its careful administration

of that evidence; rather than a categorical bar on evidence regarding general mental

capacity. *Id.* Critically, the D.C. Circuit concluded that while the defendant's mental

capacity did not excuse him from culpability for his activity, it may well be relevant to

whether the Government proved an element of the conspiracy charge—that in

committing such acts, the defendant entertained the specific intent to further the

purposes of the conspiracy. *Id.*

The Government chose to charge Mr. Isaacs with conspiracy to stop, delay, and

hinder the certification of the Electoral College vote. It is hardly prejudicial, let alone

*substantially* prejudicial, to allow Mr. Isaacs to call an expert universally recognized in

ASD to assist the jury in understanding the characteristics of someone like Mr. Isaacs.

Indeed, such testimony's probative value cannot be overstated. Without testifying to the

ultimate conclusion (whether Mr. Isaacs knowingly joined the conspiracy

understanding its purpose), Dr. Sperry will explain to the jury that Mr. Isaacs's

executive functioning deficits make it difficult for him to see the big picture. Sperry

Report at 8.  She will also testify that people with ASD are taught to employ the

modeling strategy in social situations, which includes language and behavior. *Id.* at 61.

In addition, Dr. Sperry is expected to testify that people with autism have weak central

coherence, which means that they are hyper-focused on details but often miss the big

picture.  *Id.* at 8.  This testimony will aid the jury in understanding Mr. Isaacs's

defenses, while failing to recognize what was happening around him.

Dr. Sperry's testimony is also critically important because ASD is not always

readily apparent to others, including to a jury. ASD can be masked, it can be hidden,

but it can never be cured. *Id.* at 7. Dr. Sperry will assist the jury in understanding how Mr. Isaacs's cognition is affected by ASD although he might present quite "normally" to the jury.

To the extent this Court determines that certain opinions proffered by Dr. Sperry might infringe on the jury's role as the sole fact-finder, this Court should not wholesale preclude Dr. Sperry's testimony. Rather, this Court could permit Dr. Sperry's testimony on areas where the risk to confusion did not substantially outweigh the probative value. *See, e.g., United States v. Sutton*, No. 21-0598, 2022 WL 16960338 (D.C. Cir. 2022) (permitting certain testimony admissible after conducting an analysis under Rules 702 and 403, while excluding other proffered testimony). In other words, the Government wants this Court to take an all-or-nothing approach, and the case law supports the opposite.

B.       *Mr. Isaacs Does Not Intend to Elicit Testimony Regarding Public Authority*

Next, the Government asserts that this Court should exclude Dr. Sperry's testimony under Federal Rule of Evidence 403 because there is a risk of conflating the issue with a public authority defense. As stated in his Response to the Government's Omnibus Motion *in Limine* to Preclude Certain Untimely and Irrelevant Testimony, Mr. Isaacs does not assert a public authority defense and, moreover, he does not intend to elicit such testimony from Dr. Sperry.

C.      *Dr. Sperry's was Entitled to Rely on Evidence That Otherwise Constituted
        Inadmissible Hearsay.*

Finally, the Government argues that Dr. Sperry's testimony should be excluded

under Rule 403 because she would effectively be introducing Mr. Isaacs' out of court

statements. The Government, understanding the well-settled principle that an expert can

rely on inadmissible evidence, cites *United States v. Mejia*, 545 F.3d 179, 197 (2d Cir. 2008),

for the proposition that an expert cannot transmit hearsay to the jury. We agree. The

Second Circuit explained that under Rule 703, experts can rely on inadmissible evidence,

*including hearsay*, if experts in the field reasonably rely on such evidence in forming their

opinions. *Id*; *see also U.S. v. Smith*, 964 F.2d 1221, 1223 (D.C. Cir. 1992) (explaining same).

Dr. Sperry will testify during the *Daubert* hearing that experts in the field of ASD

routinely rely on speaking with the patient when forming an opinion. One wonders how

the Government suggests an expert formulate an opinion involving cognition without

speaking to the individual and those close to him. Indeed, it is a certainty that the

Government would object vociferously if Dr. Sperry never spoke with Mr. Isaacs and his

family when formulating her opinion.

IV.    **In the Alternative, Dr. Sperry Should Be Permitted To Testify To Certain
       Aspects of Her Findings or if Mr. Isaacs Testifies.**

Even if this Court accepts the Government's arguments, that would not support

excluding all of Dr. Sperry's testimony. Thus, even if this Court finds that portions of

Dr. Sperry's proffered testimony are inadmissible as unreliable or irrelevant, Dr.

Sperry's limited testimony regarding the fact of Mr. Isaacs' ASD diagnosis and the

characteristics of ASD are admissible. For example, in *United States v. Cottrell*, 333 Fed.

Appx. 213 (9th Cir. 2009), the U.S. Court of Appeals for the Ninth Circuit reversed the

district court's decision to exclude expert testimony regarding the defendant's ASD

diagnosis. *Id*. at 216–17. The defendant was charged with aiding and abetting—a

specific intent crime. *Id*. at 216. The Ninth Circuit reasoned: "To the extent that the

[excluded] Asperger's evidence was aimed at defeating an inference of Cottrell's intent

from the circumstances, it was relevant and could have assisted the jury's determination

of whether Cottrell had the specific intent required for aiding and abetting. The

exclusion of that evidence was thus an abuse of discretion." *Id*. The conviction was

vacated because the defendant's ASD diagnosis was improperly excluded. *Id*. While

Cottrell is not binding on this Court, it is nonetheless instructive on the precise issue at

the center of the Government's motion to exclude Dr. Sperry's testimony and is cited for

the Court's consideration as persuasive authority.

To the extent that this Court has concerns regarding Dr. Sperry's proffered

testimony, "[v]igorous cross-examination, presentation of contrary evidence, and

careful instruction on the burden of proof are the traditional and appropriate means of

attacking" that testimony. *Daubert*, 509 U.S. at 596. In addition to the procedural

safeguards specifically contemplated in Daubert, this Court will also have the

opportunity during the trial to entertain objections to particular questions put to Dr.

Sperry and will be able to limit the introduction of any testimony that it finds to lack a

sufficient basis. Such regulation of Dr. Sperry's testimony at trial is preferable to the

overbroad and unnecessary total exclusion sought by the Government.

## V.    Conclusion

Mr. Isaacs respectfully requests the Court deny the Government's motion to exclude Dr. Sperry from testifying. Her testimony is critical in helping the jury understand how Mr. Isaacs' ASD diagnosis causes him to perceive and react to certain events.

Respectfully submitted,


_____/s/_____
Gene Rossi, Esquire
Virginia Bar Number 93136
Carlton Fields, P.A.
Suite 400 West
1025 Thomas Jefferson Street, NW
Washington, DC 20007-5208
Telephone: 202-965-8119
Email: grossi@carltonfields.com

Natalie A. Napierala, Esquire
New York State Bar Number 2445468
Carlton Fields, P.A.
36th Floor
405 Lexington Avenue
New York, NY 10174-0002
Telephone: 212-785-2747
Email: nnapierala@carltonfields.com

Charles M. Greene, Esquire
Florida Bar Number 938963
Law Offices of Charles M. Greene, P.A.
55 East Pine Street
Orlando, FL 32801
Telephone: 407-648-1700
Email: cmg@cmgpa.com

*Counsel for Defendant William Isaacs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that WILLIAM ISAACS' RESPONSE IN OBJECTION TO THE

GOVERNMENT'S MOTION TO EXCLUDE EVIDENCE ABOUT DEFENDANT'S

ALLEGED MENTAL CONDITION AND REQUEST FOR *DAUBERT* HEARING was

filed with the Clerk of the Court via ECF on Wednesday, February 1, 2023.

Respectfully submitted,


_____/s/_____
Gene Rossi, Esquire