**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
|     Plaintiff | ) | Criminal Case 21-CR-28 |
| | ) | |
| v. | ) | Sentencing: August 31, 2023 |
| | ) | |
| WILLIAM ISAACS | ) | Judge Amit P. Mehta |
|     Defendant | ) | |

## WILLIAM ISAACS' MOTION FOR A NEW TRIAL

COMES NOW Defendant William Isaacs, by and through his counsel, and hereby files with this Honorable Court a motion for a new trial, pursuant to Fed. R. Crim. P. 33.

In light of the avalanche of filings and rulings in this and related matters, *see United States v. Fischer*, Appellate Case 22-3038 (D.C. Cir.) (April 7, 2023, slip opinion), we shall abide by this Court's reasonable order (ECF Doc. 924) to Mr. Isaacs and his co-defendants to "incorporate" by reference and *not* to "repeat in full any post-trial arguments made in *United States v. Rhodes*," Criminal Action 22-CR-15 (Mehta, J.) ("Rhodes I"). Moreover, the Defendant will attempt to comply further with the spirit of the Court's order by incorporating by reference, if appropriate, any relevant arguments that may have been made in filings in this trial ("Rhodes III"), as well as in both of the two earlier jury trials (Rhodes I and "Rhodes II"). Last, we incorporate by reference the case law cited in Rhodes I-III with respect to the well-established standards of review for a motion under Rule 33.

## Procedural Posture

Mr. Isaacs was indicted on seven counts in an Eighth Superseding Indictment, which was filed on June 22, 2022. The trial of this six-week matter (Rhodes III) involved multiple phases, excluding weekends, off days, and a holiday: voir dire (February 3 and 6-9, 2023); opening statements (February 9); testimony (twenty-eight witnesses during February 10 to March 8); closing arguments (March 9-10); jury instructions (March 10); and deliberations (March 10-16 and 20). On March 16, Mr. Isaacs was found guilty of all seven counts with which he was charged, including Count 1 (18 U.S.C. § 1512(k)—Conspiracy to Obstruct an Official Proceeding) and Count 2 (18 U.S.C. §§ 1512(c)(2) & 2—Obstruction of an Official Proceeding and Aiding and Abetting).

## Issues

Whether a new trial is warranted because the jury was improperly tainted by the government's use of the Defendant's proffer during pretrial proceedings and at the trial.

Whether the jury's receipt of two unadmitted pieces of evidence (videos) is the basis for a new trial.

## Argument

I.   **The Evidence Related to the Defendant's Proffer Tainted the Jury**.

Although we *greatly appreciate* the extremely careful, patient, and thorough consideration by this Court on the ASD issue, which was most fervently contested, Mr. Isaacs continues to respectfully submit that the use *for any purpose whatsoever* of Mr. Isaacs' March 18, 2021, proffer, before which there was no indication verbally or in writing that it would be a *recorded* event, was a fatal error. The 2021 proffer was used

during trial, pretrial proceedings (e.g., January 20, 2023, Rules 12 and 104 hearing), and Rule 16 expert discovery. The use of the proffer in any form whatsoever was a manifest injustice, as well as a compelling reason for the granting of our motion.

We incorporate by reference all the oral arguments and filings (including, but not limited to, ECF Docs. 877, 880, and 874) relating to the proffer issue. Nonetheless, we summarize very briefly some salient points. First, before the March 18 proffer, there was no discussion or written agreement about the recording of the proffer. Second, the recording was an incredibly prejudicial aspect of the proffer; if a recording would have been insisted upon, no proffer would have been held. That point is not disputed. Third, during the recording, the government's vague and casual manner in which it allegedly obtained *express verbal* consent (via a game day "bait-and-switch) to have a videotaping of the proffer does not cure the defect in the process.

Fourth, the use of the recorded proffer by the government during the pretrial process, at the January 20, 2023, hearing, most likely had a profound impact on whom we can arguably call the most influential member of the panel: Juror 48 (aka Juror "2643"), who appears to have worked for C-SPAN *at and near the U.S. Capitol for thirty-two years*. In other words, the improper use of the proffer was poisonous to the deliberations and was prejudicial to Mr. Isaacs.

On March 22, 2023, Juror 48, who was voir dired on February 6, gave a lengthy C-SPAN podcast interview (110 minutes) to veteran journalist Brian Lamb, for or with whom she had worked at the Capital for *over three decades*. *See* "Episode 107: Oath Keeper Trial Juror"

(https://podcasts.apple.com/us/podcast/booknotes/id1560876048) (provided earlier to Chambers by the United States in an email). In the C-SPAN interview, Juror 48 makes salient observations that are relevant to our motion.

First, we adopt the arguments in Laura Steele's motion for a new trial (ECF Doc. 931), in which she argues that Juror 48's comments show that the jury did not *faithfully* follow the instruction on burden of proof.

Second, Juror 48 illogically compares herself during deliberations to the actor Henry Fonda in the 1957 movie "12 Angry Men." Most unfortunately for Mr. Isaacs, Juror 48 was far from and the *reverse* of Mr. Fonda. In his famous role, the actor was the sole and lonely *initial* vote (1 versus 11) *for acquittal* in a capital murder case involving an impoverished teenager who allegedly had stabbed and killed his abusive father. In the end, the teenager was acquitted because of the persuasive skills of Mr. Fonda. Unlike the movie, Juror 48 was the opposite: apparently the sole *guilty* vote at times. And if one carefully listens to her logic and reasoning in the protracted interview, she makes comments that seem to relate to the proffer issue and her improper application of the jury instruction on ASD.

Third, we concede that Juror 48 was later joined in her reverse-Fonda role by an apparently *current* lawyer for the U.S. Justice Department Tax Division lawyer, for which he has been working for roughly three decades. In referring to herself and the DOJ lawyer, she commented that her "tag team" was two votes for guilt against "the other ten"--and that at times there were several jurors who neither acknowledged nor looked at her during the deliberations.

Fourth, what is clear from this interview is that Juror 48 made the premeditated decision to divulge the vagaries of the jury deliberations.  Fortunately for Mr. Isaacs, her comments have provided him with confirmation of the imperfections of this trial process, including, but not limited to, the improper use of proffered information and ignoring the ASD jury instruction.

Fifth, Juror 48's comments appear to suggest that the government's rebuttal (an expert and playing of video clips from proffer) played a significant role in her concluding that ASD was not an impediment to finding him guilty.  Moreover, while ignoring the ASD instruction, she made a second point of calling the testimony relating to ASD a complete "waste of time" because the jury instruction, which we submit was challenging to follow, allegedly said so.  This second point that ASD testimony and evidence were a "waste of time" is substantial evidence that Juror 48 simply did not properly follow the law of this trial.  Although she stated how she was dutifully focused on the wording of the jury instructions, she contradicts herself by admitting that she did not properly apply the key instruction on ASD.  As we argued in closing, the ASD instruction left open the possibility that ASD could indeed be a "factor" in making a judgment about Mr. Isaacs' state of mind.  Juror 48 seems to have ignored that part of the instruction.

In sum, we submit that the improper use of the proffered testimony had an adverse influence on Juror 48's view of Mr. Isaacs' ASD, as well as her interpretation of the ASD instruction.  And we are not speculating when we assert that "several" jurors were "sympathetic" to "certain defendants," one of whom was likely Mr. Isaacs.  We

are not overstating in asserting that Mr. Isaacs was sympathetic, not only because of his ASD and personal history, but also due to what Juror 48 had commented was his being alone on January 6, after he had travelled here with his aunt, uncle, and another person.

With the *utmost* respect for this Court, we respectfully ask for a reconsideration of its ruling on the use of the proffer-related evidence, especially in light of Juror 48's comments. We submit that there are valid grounds for this Court's granting of our motion. The interview of Juror 48 provides strong evidence that the proffer-related evidence was the foundation for what appears to be the government's successful argument that Mr. Isaacs' actions on January 6 were not related in any manner to his ASD. As the government said in closing, Mr. Isaacs' ASD deserves our sympathy, but it is "no excuse" for his actions. Juror 48 embraced that argument *in toto* based on the tainted evidence--and may have ignored the ASD instruction.

II.     **The Jury's Receipt of Two Unadmitted Videos was Manifestly Unjust**.

Jury deliberations in this matter occurred over six days: March 10, 13-16, and 20. The verdicts were announced in open court on March 20 (1:20P). However, on March 20 (9:04A), and after the jury had deliberated over five days, this Court learned of and heard arguments on how to address the accidental submission to the jury of two *inculpatory* videos that were neither admitted nor published to the jury during trial. One video (a seven second clip) was from the west side of the Capitol; whereas, the second video (twenty to thirty seconds) was of an incident near the garage door in or close to the Visitor Center. Mr. Isaacs submits that the videos were sufficiently inflammatory as to have created a manifest injustice, if seen by the jury. In addition, we

are not confident that this Court's curative instruction (10:02A) (essentially "ignore the two videos if they were part of the jury's decision on a count") to the jury was sufficient to cure the defect in the deliberation process.  To the extent a co-defendant files a motion for a new trial on this issue, Mr. Isaacs joins such request.

  We stress that this issue involves an honest mistake by the government and Mr. Isaacs; both parties signed off on the massive list of *admitted* evidence that would be seen by the jury.  There is no evidence of bad faith on the part of anyone.  However, an intentional act is not required for the granting of our motion.  Mere negligence is enough.  *See United States v. Lentz*, 383 F.3d 191, 219-21 (4th Cir. 2002) (finding that the negligent submission to the jury of excluded evidence was grounds for a new trial because the *presumption of prejudice* was not overcome).  In the case at bar, we have two aspects of this issue with which to contend.  One is the negligent submission to the jury of the two unadmitted videos, which we submit were unduly prejudicial.  The second aspect is that this Court's curative instruction was difficult to execute without exacerbating the problem.

  In *Lentz*, the defendant was charged with kidnapping and murdering his estranged wife over a child custody issue.  The victim had two "day planners" that contained exceedingly inculpatory information.  The trial court had admitted only one or two pages of each planner into evidence.  However, after the verdicts were rendered, three jurors informed the defense team and later testified at a hearing that the *entire* planners were present during deliberations.  *Id.* at 205.  The *Lentz* court had no difficulty in finding enough prejudice to grant a new trial.

Unlike *Lentz*, this Court was placed in the most unenviable position of having to make a vital decision to salvage a defect in the deliberation process. Unfortunately, this Court was asked to "unring" the proverbial bell. In other words, the jurors had to conduct a last-minute internal investigation about what was in their minds, and when, with respect to each guilty verdict. And if they saw the two inculpatory videos, then just ignore them entirely, if they had played a role in their decision. This is an intellectual exercise that would seem to be Herculean, in light of Juror 48's less-than-flattering comments about the intellectual heft of some of the jurors, as well as her incorrect understanding of the ASD instruction. Therefore, a new trial is warranted.

## **CONCLUSION**

We ask this Honorable Court to grant our motion for a new trial under Rule 33.

Respectfully submitted,
/s/
Gene Rossi, Esquire
D.C Bar Number 367250
Carlton Fields, P.A.
Suite 400 West
1025 Thomas Jefferson Street, NW
Washington, DC 20007-5208
Telephone: 202-965-8119
Cell: 703-627-2856
Email: grossi@carltonfields.com

Charles M. Greene, Esquire
Florida Bar Number 938963
Law Offices of Charles M. Greene, P.A.
55 East Pine Street
Orlando, FL 32801
Telephone: 407-648-1700
Email: cmg@cmgpa.com

*Counsel for Defendant William Isaacs*

## CERTIFICATE OF SERVICE

I hereby certify that the **WILLIAM ISAACS' MOTION FOR FOR A NEW TRIAL** was filed with the Clerk of the Court via ECF on Memorial Day of 2023, a day on which we should always remember those who gave the ultimate sacrifice in serving the United States.

                                                              Respectfully submitted,
                                                              /s/
                                                           Gene Rossi, Esquire